# EXHIBIT A



Loan Number



Case Number



Borrower Name

**Carraway, Wanda**

Funding Date

6/24/2011

Closing Date

6/20/2011

Doc Type          1210          Doc Type Name

1210          Initial Loan Agreement

Status

Pending Trailing Docs          1

313594_Carraway_1210_

# TEXAS Home Equity Conversion Mortgage Loan Agreement
## Closed End

FHA Case No.
Loan No. ▮▮▮▮▮▮▮▮

THIS AGREEMENT is made on, **June 20, 2011**, among

**Wanda Carraway** ("Borrower"), and

**Urban Financial Group Inc.** ("Lender")

and the Secretary of Housing and Urban Development ("Secretary").

### Article 1 - Definitions

**1.1. Expected Average Mortgage Interest Rate** means the amount indicated on the attached payment plan (Exhibit 1). It is a constant interest rate used to calculate monthly payments to the Borrower throughout the life of the loan.

**1.2. Loan Advances** means all funds advanced from or charged to Borrower's account under conditions set forth in this Loan Agreement, whether or not actually paid to Borrower. To the extent Borrower prepays any outstanding balance under the Note, such amounts will no longer be available to be advanced under this Loan Agreement.

**1.3. Loan Documents** means the Note, Second Note, Security Instrument and Second Security Instrument.

**1.4. Maximum Claim Amount** means the lesser of the appraised value of the property, as determined by the appraisal used in underwriting the loan, or the sales price of the property being purchased for the sole purpose of being the principal residence, or the national mortgage limit for a one family residence under section 305(a)(2) of the Federal Home Loan Mortgage Corporation Act (as adjusted where applicable under section 214 of the National Housing Act) as of the date of loan closing. Closing costs must not be taken into account in determining appraised value.

**1.5. Note** means the promissory note signed by Borrower together with this Loan Agreement and given to Lender to evidence Borrower's promise to repay, with interest, Loan Advances by Lender or Lender's assignees.

**1.6. Principal or Principal Balance** means the sum of all Loan Advances made as of a particular date, including interest and mortgage insurance premiums.

**1.7. Principal Limit** means the amount indicated on the attached payment plan (Exhibit 1) when this Loan Agreement is executed, and increases each month for the life of the loan at a rate equal to the sum of the applicable monthly interest rate charge, plus one-twelfth the annual MIP. The Principal Limit is calculated by multiplying the Maximum Claim Amount by a factor supplied by the Secretary, which is based on the age of the youngest Borrower and the Expected Average Mortgage Interest Rate.

**1.8. Principal Residence** means the dwelling where the Borrower shall maintain his or her permanent place of abode, and typically spends the majority of the calendar year. A person may have only one principal residence at any one time. The Property shall be considered to be the Principal Residence of any Borrower who is temporarily or permanently in a health care institution as long as the Property is the Principal Residence of at least one other Borrower who is not in a health care institution.

**1.9. Property** means Borrower's property identified in the Security Instrument.

LoanAgreement

**1.10. Second Note** means the promissory note signed by Borrower together with this Loan Agreement and given to the Secretary to evidence Borrower's promise to repay, with interest, Loan Advances by the Secretary secured by the Second Security Instrument.

**1.11. Second Security Instrument** means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Second Note.

**1.12. Security Instrument** means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Note.

## Article 2 - Loan Advances

**2.1. General.** Lender agrees to make Loan Advances under the conditions set forth in this Loan Agreement in consideration of the Note and Security Instrument given by Borrower on the same date as this Loan Agreement. The Borrower may not use a credit card, debit card, preprinted solicitation check, or similar device to obtain Loan Advances under this Agreement.

**2.2. Initial Advances.**

**2.2.1.** Loan Advances shall be used by Lender to pay, or reimburse Borrower for, closing costs listed in the Schedule of Closing Costs (Exhibit 2) attached to and made a part of this Loan Agreement, except that Loan Advances will only be used to pay origination fees in an amount not exceeding the greater of $2,500 or 2% of the maximum claim amount of the mortgage, up to a maximum claim amount of $200,000, plus one percent of any portion of the maximum claim amount that is greater than $200,000, nor shall the Lender charge the Borrower an origination fee in excess of $6,000.

**2.2.2.** Loan Advances shall be used by Lender to discharge the liens on the Property listed in the Schedule of Liens/HECM for Purchase Disbursements to Seller (Exhibit 2) attached to and made a part of this Loan Agreement.

**2.2.3.** Lender shall pay an initial Loan Advance to Borrower in the amount indicated on the attached payment plan (Exhibit 1).

**2.2.4.** Initial advances required by this Section 2.2. shall be made, for purchase money loans, at settlement or as soon thereafter as permitted, or for refinance loans, as soon as such advances are permitted by the applicable provisions of 12 CFR Part 226 (Truth in Lending) governing Borrower's right of rescission, but not before that time.

**2.3. Set Asides.**

**2.3.1.** Amounts set aside from the Principal Limit shall be considered Loan Advances to the extent actually disbursed or earned by Lender.

**2.3.2.** Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) for repairs to be made in accordance with a Repair Rider attached to and made a part of this Loan Agreement (Exhibit 3).

**2.3.3.** Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payments due for first year property charges consisting of taxes, hazard insurance, ground rents and assessments.

LoanAgreement

**2.3.4.** Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payment due for a fixed monthly charge for servicing activities of Lender or its servicer. Such servicing activities are necessary to protect Lender's interest in the Property. A servicing fee set aside, if any, is not available to the Borrower for any purpose, except to pay for loan servicing.

**2.4. Charges and Fees.** Borrower shall pay to Lender reasonable and customary charges and fees as permitted under 24 CFR 206.207(a). Such amounts shall be considered Loan Advances when actually disbursed by Lender. After the time of the extension of credit is established, no transaction fee will be charged or collected by the Lender solely in connection with any debit or Loan Advance under this Agreement.

**2.5. Monthly Payments.**

**2.5.1.** Borrower may request Loan Advances as Monthly Payments wherein Loan Advances shall be paid directly to the Borrower in equal monthly payments.

**2.5.2.** Monthly payments shall be calculated for either the term payment plan or the tenure payment plan, as requested by Borrower.

**2.5.3.** Monthly payments under the term payment plan are made only during a term chosen by Borrower and shall be calculated so that the sum of (i) or (ii) added to (iii), (iv), (v) and (vi) shall be equal to or less than the Principal Limit at the end of the term:

**(i)** Initial Advances under Section 2.2., plus any initial servicing fee set aside under Subsection 2.3.4., or

**(ii)** The Principal Balance at the time of a change in payments under Sections 2.8. and 2.9. plus any remaining servicing fee set aside under Subsection 2.3.4., and

**(iii)** The portion of the Principal Limit set aside as a line of credit under Section 2.7., including any set asides for repairs (Subsection 2.3.2.) and first year property charges (Subsection 2.3.3.), and

**(iv)** All monthly payments due through the payment term, including funds withheld for payment of property charges under Section 2.10., and

**(v)** All mortgage insurance premiums, or monthly charges due to the Secretary in lieu of mortgage insurance premiums, which are due through the payment term (Subsection 2.13.), and

**(vi)** All interest through the payment term. The Expected Average Mortgage Interest Rate shall be used for this purpose.

**2.5.4.** Monthly payments under the tenure payment plan shall be calculated as in Subsection 2.5.3. as if there were a payment term with the number of months in the term equal to the sum of 100 minus the age of the youngest Borrower multiplied by 12, but payments shall continue until the loan becomes due and payable as provided in the Loan Documents.

**2.5.5.** Monthly payments shall be paid to Borrower on the first business day of a month.

**2.5.6.** If Borrower has requested monthly payments, payments shall be indicated on the attached payment plan (Exhibit 1). The payment plan may be changed by Borrower as provided in Sections 2.8. and 2.9.

**2.5.7.** Compliance with Section 50(k)(7), Article XVI of the Texas Constitution. If Lender fails to make Loan advances as required by the Loan Documents and if Lender fails to mail or electronically transfer such Loan Advances within thirty (30) days after notification from the Borrower, Lender shall forfeit all principal and interest under the Note. Such forfeiture does not apply when the first Security Instrument and Note are subsequently assigned to the Secretary in order to cure the default.

## 2.6. Line of Credit without Monthly Payments.

**2.6.1.** Borrower may request (i) a single Loan Advance under a line of credit payment plan to be paid in a lump sum disbursement upon settlement of the loan or (ii) Loan Advances under a line of credit payment plan in amounts and at times determined by Borrower, if the Principal Balance of the loan after the Loan Advance is made is less than or equal to the applicable Principal Limit, excluding any portion of the Principal Limit set aside under Sections 2.3.2. or 2.3.4. The line of credit amount increases at the same rate as the total Principal Limit under Section 1.7.

**2.6.2.** Line of credit payments shall be paid to Borrower within five business days after Lender has received a written request for payment by Borrower.

**2.6.3.** Lender may specify a form for line of credit payment requests.

**2.6.4.** Lender shall provide Borrower with a statement of the account every time a line of credit payment is made. The statement shall include the current interest rate, the previous Principal Balance, the amount of the current Loan Advance, the current Principal Balance after the Loan Advance, and the current Principal Limit.

## 2.7. Line of Credit with Monthly Payments.

**2.7.1.** Borrower may receive monthly payments under either a term or tenure payment plan combined with a line of credit, as indicated on the attached payment plan (Exhibit 1).

**2.7.2.** Subsections 2.6.2., 2.6.3. and 2.6.4. apply to a line of credit combined with term or tenure payments.

**2.7.3.** If Borrower combines a line of credit with a term or tenure payment plan, the Principal Limit is divided into: (a) an amount for the line of credit payments, including repair and property charge set asides, (b) an amount for monthly payments which shall be calculated under Subsection 2.5.3. or 2.5.4. and (c) an amount for a servicing fee set aside, if required by Lender under Subsection 2.3.4. Amounts designated for line of credit payments and monthly payments increase independently at the same rate as the total Principal Limit increases under Section 1.7. Borrower can request Loan Advances in amounts and at times determined by Borrower, if the requested amount is less than or equal to the difference between (a) the Principal Limit applicable to the line of credit set aside and (b) the portion of the outstanding Principal Balance attributable to draws on the line of credit, including accrued interest and mortgage insurance premium or monthly charge due to the Secretary, but excluding any portion of the Principal Limit set aside under Subsections 2.3.2. and 2.3.4.

**2.7.4.** A Borrower receiving monthly payments in combination with a line of credit may prepay the outstanding mortgage balance in accordance with the terms of the Note.

**2.8. Change in Payments Generally.**

**2.8.1.** Whenever the Principal Balance of the loan is less than the Principal Limit, Borrower may change from any payment plan allowable under this Loan Agreement to another.

**2.8.2.** If Borrower requests that monthly payments be made after a change in payment plan, Lender shall recalculate future monthly payments in accordance with Subsections 2.5.3. or 2.5.4.

**2.8.3.** Lender may charge a fee not to exceed twenty dollars, whenever payments are recalculated and in any other circumstances in which Borrower is required to sign a form acknowledging a change in payment plan as provided in Subsection 2.8.5.

**2.8.4.** Loan Advances under a new payment plan shall be paid to Borrower in the same manner and within the time period required under Sections 2.5., 2.6. or 2.7.

**2.8.5.** Changes in the payment plan must be acknowledged by Borrower by signing a form containing the same information as the attached payment plan (Exhibit 1). Lender shall provide a copy of the completed form to Borrower.

**2.9. Change in Payments Due to Initial Repairs.**

**2.9.1.** If initial repairs after closing, made in accordance with the Repair Rider, are completed without using all of the repair set aside, Lender shall inform Borrower of the completion and the amount then available to the Borrower to be drawn under a line of credit.

**2.9.2.** If initial repairs after closing, made in accordance with the Repair Rider, cannot be fully funded from the repair set aside, any additional Loan Advances needed to complete repairs shall be made in the manner provided under Section 2.16.

**2.9.3.** If initial repairs are not completed when required by the Repair Rider, Borrower shall not request and Lender shall not make any further payments, except as needed to pay for repairs required by the Repair Rider and mandatory Loan Advances under Section 4.5. In order to complete the required repairs, Loan Advances shall be made first from the repair set aside, and then in the manner provided under Section 2.16.

**2.10. Payment of Property Charges.**

**2.10.1.** Borrower may elect to require Lender to use Loan Advances to pay property charges consisting of taxes, hazard insurance premiums, ground rents and special assessments if indicated on the attached payment plan (Exhibit 1). If Borrower has elected to have Lender pay property charges, Borrower may change this election by notifying Lender and at that time Lender shall pay to Borrower any amounts withheld from the Loan Advances to pay property charges.

**2.10.2.** If Borrower has made the election under Subsection 2.10.1. and Borrower is receiving monthly payments, Lender shall withhold amounts from each monthly payment and use the amounts withheld to make timely payments of property charges. The amounts withheld shall be calculated as provided in Subsection 2.10.3. Amounts withheld from monthly payments shall not be treated as Loan Advances and shall not bear interest except to the extent actually disbursed by Lender.

**2.10.3.** Lender shall withhold from each monthly payment an amount to pay (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for fire, flood and other hazard insurance required by the Security Instrument. Each monthly withholding for items (a), (b) and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender. The full annual amount for each item

shall be paid by Lender before an item would become delinquent. Lender shall add the amounts for items (a), (b) and (c) to the Principal Balance when paid. If at any time the withholding for item (a), (b), or (c) exceeds the amount of actual property charges, Lender shall pay the excess withholding to Borrower and add it to the Principal Balance. If the total of the withholding for item (a), (b), or (c) is insufficient to pay the item when due, the amount necessary to make up the deficiency on or before the date the item becomes due shall be paid as a Loan Advance in the manner provided under Section 2.16.

**2.10.4.** If Borrower has made the election under Subsection 2.10.1. and Borrower is not receiving monthly payments, Lender shall make Loan Advances under the line of credit payment plan as needed to make timely payments of property charges, provided that no such Loan Advance shall exceed the amount permitted by Section 2.6.1.

**2.10.5.** If Borrower fails to pay the property charges in a timely manner, and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16. If a pattern of missed payments occurs, Lender may establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have Lender pay the property charges.

**2.10.6.** Lender shall immediately notify any Borrower who has made the election under Subsection 2.10.1. whenever Lender determines that amounts available from monthly payments or line of credit payments will be insufficient to pay property charges.

**2.11. Insurance and Condemnation Proceeds.** If insurance or condemnation proceeds are paid to Lender, the Principal Balance shall be reduced by the amount of the proceeds not applied to restoration or repair of the damaged Property and the available loan funds shall be recalculated. At the same time, the Principal Limit also shall be reduced by the amount of the proceeds applied to reduce the Principal Balance.

**2.12. Interest.**

**2.12.1.** Interest shall be calculated as provided in the Loan Documents.

**2.12.2.** Interest shall accrue daily and be added to the Principal Balance as a Loan Advance at the end of each month.

**2.13. Mortgage Insurance Premium (MIP); Monthly Charge.**

**2.13.1.** Monthly MIP shall be calculated as provided in HUD Mortgagee Letter 2010-34 (Sept. 21, 2010). If the Security Instrument is held by the Secretary or if the Secretary makes Loan Advances secured by the Second Security Instrument, a monthly charge shall be due to the Secretary and shall be calculated in the same manner as MIP.

**2.13.2.** The full amount of monthly MIP or monthly charge, including any portion of the MIP retained by a Lender under 24 CFR 206.109, shall be considered to be a Loan Advance to Borrower on the later of the first day of the month or the day Lender pays the MIP to the Secretary, if any MIP is due to the Secretary. In the event that the Note becomes due and payable or the Note is prepaid in full after the first day of the month, Lender may add the accrued MIP to the Principal Balance or the Secretary may add the accrued monthly charge to the Principal Balance.

**2.14. Manner of Payment.** For purposes of this Section "Borrower" shall not include any person who

LoanAgreement

signed this Loan Agreement but who has a Principal Residence different from the Property. Only a Borrower has a right to receive Loan Advances. Borrowers shall choose to receive Loan Advances by either electronic funds transfer to a bank account designated by all Borrowers or by check mailed to an address designated by all Borrowers, except where all Borrowers agree that payment should be made directly to a third party for the benefit of the Borrowers. Borrowers may change the manner of payment by notifying Lender.

**2.15. Protection of Property.**

**2.15.1.** If Borrower vacates or abandons the Property, or if Borrower is in default under the Security Instrument, then Lender may make reasonable expenditures to protect and preserve the Property and these expenditures will be considered Loan Advances as required under Section 2.16.

**2.15.2.** If Borrower fails to pay governmental or municipal charges, fines or impositions that are not included in Section 2.10. or if there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property. These expenditures will be considered Loan Advances as required under Section 2.16.

**2.16. Unscheduled Payments.** Loan Advances made pursuant to Sections 2.4., 2.9.2., 2.9.3., 2.10.3., 2.10.5., and 2.15. shall be made from a line of credit under Section 2.6. or 2.7. to the extent possible. If no line of credit sufficient to make the Loan Advances exists, any future monthly payments must be recalculated in accordance with Subsection 2.5.3. or 2.5.4. to create a line of credit sufficient to make the Loan Advances.

### Article 3 - Late Charge

**3.1. Amount Due.** Lender shall pay a late charge to Borrower for any late payment. If Lender does not mail or electronically transfer a scheduled monthly payment to Borrower on the first business day of the month or mail or electronically transfer a line of credit payment to Borrower within 5 business days of the date Lender received the request, the late charge shall be 10 percent of the entire amount that should have been paid to the Borrower for that month or as a result of that request. For each additional day that Lender fails to make payment, Lender shall pay interest on the late payment at the interest rate stated in the Loan Documents. If the Loan Documents provide for an adjustable interest rate, the rate in effect when the late charge first accrues shall be used. In no event shall the total late charge and interest exceed five hundred dollars. Any late charge shall be paid from Lender's funds and shall not be added to the unpaid Principal Balance.

**3.2. Waiver.** The Secretary may waive a late charge where the Secretary determines that the late payment resulted from circumstances beyond Lender's control and that no act or omission of Lender contributed to the late payment. At the time Lender requests a waiver, Lender shall inform Borrower that a waiver of late charge has been requested from the Secretary and that the late charge will be sent to Borrower if the waiver is denied. If the Secretary denies the waiver, Lender shall pay to Borrower the late charge and interest that accrued from the date the payment was late until the date the waiver was requested.

LoanAgreement

## Article 4 - Termination of Lender's Obligation to Make Loan Advances

**4.1. Loan Due and Payable.** Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment-in-full to Lender is required under one or more of the Loan Documents unless and until the notice is rescinded by Lender.

**4.2. Loan Advances by Secretary.** If the Security Instrument has been assigned to the Secretary or the Secretary notifies Lender and Borrower that Loan Advances are secured by the Second Security Instrument, Lender shall have no further obligation to make Loan Advances under this Loan Agreement, unless the Secretary accepts later reimbursement by the Lender for all Loan Advances made, earned or disbursed by the Secretary. The Secretary may establish procedures for handling requests for payments and changes in payment plans during the interval between Lender's notification of intent to assign the Security Instrument to the Secretary and completion of the assignment. Borrower shall be informed of such procedures by Lender and/or the Secretary, and Borrower shall comply with such procedures.

**4.3. Lien Status Jeopardized.** Lender shall have no obligation to make further Loan Advances if the Lender or the Secretary determines that the lien status of the Security Instrument or the Second Security Instrument is jeopardized under State laws as described in Paragraph 12(a) of the Security Instrument or Second Security Instrument and the lien status is not extended in accordance with Paragraph 12(a).

**4.4. Bankruptcy.** Lender shall have no obligation to make further Loan Advances on or following the date that a petition for bankruptcy of Borrower is filed.

**4.5. Mandatory Loan Advances.** Notwithstanding anything in Sections 4.1. through 4.4., all Loan Advances under Sections 2.10 (property charges), 2.12. (interest), 2.13. (MIP or monthly charge), 2.15. (protection of Property) or 2.3.4. (servicing fee) shall be considered mandatory Loan Advances by Lender.

**4.6. Prepayment in Full.** Lender shall not make Loan Advances if Borrower has paid the Note in full (or the Second Note, if the Secretary has assumed the Lender's rights and obligations under Article 5).

## Article 5 - HUD Obligation

If the Lender has no further obligation to make payments to Borrower because of Section 4.2., the Secretary shall assume the rights and obligations of Lender under this Loan Agreement, except the Secretary shall not assume any obligation of paying flood, fire and other hazard insurance from Loan Advances. If the Secretary makes Loan Advances to Borrower under the Second Security Instrument, the portion of the Principal Limit available for Loan Advances shall be the difference between the current Principal Limit and the combined Principal Balances on the Security Instrument less accrued interest and the Second Security Instrument.

## Article 6 - Miscellaneous

**6.1. Forbearance Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**6.2. Successors and Assigns Bounds; Joint and Several Liability; Cosigners.** The covenants and agreements of this Loan Agreement shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Secretary shall fully relieve the Lender of its obligations under this Loan Agreement. Borrower may not assign any rights or obligations under this Loan Agreement. Borrower's covenants and agreements shall be joint and several.

**6.3. Notices.** Any notice to Borrower provided for in this Loan Agreement shall be given by delivering

LoanAgreement

it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the property address shown in the Security Instrument or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to the Secretary shall be given by first class mail to the HUD National Servicing Center or any other place designated by the Secretary. Any notice provided for in this Loan Agreement shall be deemed to have been given to Borrower, Lender or the Secretary when given as provided in this Section.

**6.4. Governing Law; Severability.** This Loan Agreement shall be governed by Federal law and the law of the jurisdiction in which the Property is located. The Lender in this Loan Agreement must comply with the Fair Housing Act, 42 U.S.C. Sec. 3601 - 3619, which prohibits discrimination on the basis of race, color, religion, sex, handicap familial status, or national origin. In the event that any provision or clause of this Loan Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Loan Agreement which can be given effect without the conflicting provision. To this end the provisions of this Loan Agreement are declared to be severable.

**6.5. Copies.** Lender, Borrower and the Secretary shall each receive one original executed copy of this Loan Agreement when signed by the Secretary.

**6.6. When Agreement Becomes Binding.** This Loan Agreement shall bind Lender and Borrower when both Lender and Borrower have signed. This Loan Agreement shall bind the Secretary only when the lender signs on behalf of the Secretary of Housing and Urban Development and a Mortgage Insurance Certificate is issued for the Security Instrument.

**6.7. Changes to Agreement.** Lender or any holder of this Agreement may not unilaterally amend this Agreement or the Security Instrument. As specified below, however, Lender may, under certain circumstances in accordance with the terms of the Agreement or the Security Instrument: (a) terminate this Agreement, require that Borrower pay Lender the entire Principal Balance in one payment, and charge Borrower certain fees; (b) refuse to make additional Loan Advances; and (c) reduce Borrower's Principal Limit. Borrower agrees that Lender may terminate this Agreement and declare a default if there is fraud or material misrepresentations by me in connection with the Loan. Borrower agrees that Lender may make a change or changes to this Agreement if Borrower agrees to such change(s) in writing at or before the time of the change. Borrower hereby authorizes and consents to changes to the terms of this Agreement that Lender may make that will unequivocally benefit Borrower throughout the remainder of the Agreement or changes that are insignificant. Borrower agrees that Lender may refuse to make additional Loan Advances or Lender may reduce the Principal Limit if: (i) Lender reasonably believes that a Maturity Event has occurred under this Loan Agreement or the Security Instrument, or (ii) Borrower is in default under this Loan Agreement or the Security Instrument and such default is continuing, or (iii) Lender is precluded by government action from imposing the Annual Percentage Rate provided for in this Agreement or the Note, or (iv) government action adversely affects the priority of Lender's security interest under the Security Instrument such that the value of Lender's security interest is less than 120% of the Principal Limit, or (v) Lender is notified by Lender's regulatory agency that continued Loan Advances constitute an unsafe and unsound practice, or (vi) the maximum Annual Percentage Rate is reached during any period. However, Lender may not reduce the amount or number of Loan Advances under this Agreement because of an adjustment in the interest rate if periodic Loan Advances are to be made.

BY SIGNING BELOW the parties accept and agree to the terms contained in this Loan Agreement and the exhibits attached hereto.

LoanAgreement

_____ (SEAL)
Wanda Carraway

**Urban Financial Group Inc.**

By: _____

Title: _____

6. 20-2011
Date

Secretary of Housing and Urban Development

_____

By: _____

Title: _____

# EXHIBIT B

DT

A

*Prepared By and*

When Recorded Mail To:

Urban Financial Group Inc.
8909 S. Yale Ave.
Tulsa, OK 74137

ER 024 - 76 - 0741

2301-40312  [Space Above This Line For Recording Data] _____

State of TEXAS   *initials*

FHA Case No. ▮▮▮▮▮▮
Loan No. ▮▮▮▮▮▮
MIN: 1007954-0005007734-5

## NOTICE OF CONFIDENTIALITY RIGHTS:

**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### FIXED RATE
### HOME EQUITY CONVERSION DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **June 20, 2011**. The grantor is **Wanda Carraway, a single woman** , whose address is **2701 WESTHEIMER ROAD UNIT 9F, HOUSTON, Texas 77098** ("Borrower"). The trustee is Alan E. South, Attorney at Law ("Trustee"). Trustee's Address is South & Associates, PC 4600 Madison Ave., Suite 801, Kansas City, MO 64112. The beneficiary is Mortgage Electronic Registration Systems Inc. ("MERS"), which is organized and existing under the laws of Delaware, and whose address is P.O. Box 2026, Flint, MI 48501-2026, telephone (888) 679-MERS. Urban Financial Group Inc. is organized and existing under the laws of Oklahoma, and has an address of 8909 S. Yale Ave., Tulsa, OK 74137 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Fixed-Rate Note dated the same date as this Security Instrument ("Note"). The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a fixed rate (interest), and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Three Hundred Fifty Two**

1TR

2EE

HECM First Deed Of Trust

ER 024 - 76 - 0742

Thousand, Five Hundred Dollars and Zero Cents (U.S. $352,500.00); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in HARRIS County, TEXAS:

See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes

which has the address of
2701 WESTHEIMER ROAD UNIT 9F, HOUSTON, Texas 77098, ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and

HECM First Deed Of Trust

ER 024 - 76 - 0743

directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument, subject to any limitation imposed under applicable law, or be held in escrow to be so applied when permissible under applicable law. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence  after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender, subject to applicable law, may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.**  Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to

ER 024 - 76 - 0744

any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower. Any expenditures made in connection with the protection and preservation of the Property may be paid with Loan Advances and added to the outstanding balance to the extent the expenditures are for any of the following Borrower obligations: (a) taxes; (b) insurance; (c) costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with Lender; (d) assessments levied against the Principal Residence; and (e) any lien that has, or may obtain, priority over Lender's lien as it is established in the Loan Documents, as defined in the Loan Agreement. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument, subject to any limitation imposed under applicable law, or be held in escrow to be so applied when permissible under applicable law. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

        (i)  All Borrowers die; or

        (ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (A) title to the Property in fee simple; (B) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property); or (C) a life estate in the Property.

    **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

        (i)  All Borrowers cease occupying the Property for longer than 12 consecutive months without the prior written approval of the Lender; or

        (ii)  Borrower: (A) defaults on an obligation specified in the Loan Documents to repair and maintain, pay taxes and assessments on, or insure, the Property; or (B) commits actual fraud in connection with the Loan; or

        (iii)  Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority or may obtain priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (A) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (B) contests in good faith the lien by, or defends against enforcement of the lien in, legal

HECM First Deed Of Trust

ER 024 - 76 - 0745

proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; or (C) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property. Borrower agrees that failure to maintain the Property includes, but is not limited to: (i) allowing hazardous waste to be placed or stored on the Property, (ii) allowing waste or destruction to the Property, (iii) allowing a nuisance to exist on the Property, (iv) applying for or allowing the Property to be re-zoned for other than residential use, (v) making home improvements detrimental to the use of the Property, or (vi) changing the nature or use of the Property.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (a) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding; (b) reinstatement will preclude foreclosure on different grounds in the future; or (c) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

ER 024 - 76 - 0746

**(a) Modification.**

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12 (a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.**

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (i) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (ii) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (iii) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary,

HECM First Deed Of Trust

ER 024 - 76 - 0747

including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not be required to pay any amounts of principal, interest, and shared appreciation, if any, owed under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forfeiture by Lender.** If Lender fails to make loan advances as required by the Loan Documents and Lender fails to cure the default after notice from the Borrower, Lender forfeits all principal and interest due on this Security Instrument, provided that this forfeiture does not apply when this Security Instrument is assigned to the Secretary of Housing and Urban Development in order to cure a default.

It is the express intention of Lender and Borrower to structure this reverse mortgage loan to conform to the provision of the Texas Constitution applicable to reverse mortgage loans as defined by Section 50(a) (7), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, the Loan Agreement, this Security Instrument or any other loan document involving this reverse mortgage transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be reformed without the necessity of the execution of any new amendment or new document.

**15. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**16. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Secretary of Housing and Urban Development shall fully relieve Lender of Lender's obligations under this Security Instrument. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(K), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; (d) is not a Borrower for purposes of Paragraph 9 (a) and (b)(i); and (e) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

**17. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 17.

**18. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the

HECM First Deed Of Trust

ER 024 - 76 - 0748

law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**19. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**20. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**21. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 9, Lender may invoke the power of sale. Except as otherwise provided herein, Borrower hereby waives any notice, demand, presentment, notice of non-payment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action. The failure to exercise any remedy available to Lender shall not be deemed to be a waiver of any rights or remedies of Lender under the Note, this Security Instrument or the Loan Agreement. As permitted by applicable law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Paragraph 21, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

HECM First Deed Of Trust

ER 024 - 76 - 0749

22. **Foreclosure; Power of Sale. It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. Lender shall follow any rules of civil procedure promulgated by the Texas Supreme Court related to the foreclosure of liens under Section 50(a)(7), Article XVI of the Texas Constitution, if applicable.**

**Lender may request Trustee to proceed with foreclosure under the power of sale. Any such request shall comply with such rules of civil procedure if they apply. Trustee is hereby authorized and empowered, and it shall be Trustee's special duty, upon such request of Lender, to sell the Property, or any part thereof, at public auction to the highest bidder for cash, in one or more parcels and in any order Trustee determines, with or without having taken possession of same. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.**

**Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying the Property with general warranty of title by Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this paragraph 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be tenants at sufferance and may be removed by writ of possession.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 22 or applicable law.**

23. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose.

24. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for

HECM First Deed Of Trust

ER 024 - 76 - 0750

releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**25. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**26. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**27. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**28. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**29. Compliance with Section 50(v), Article XVI of the Texas Constitution.** Lender and Borrower agree that (a) the Borrower cannot use a credit card, debit card, preprinted solicitation check, or similar device to obtain an advance; (b) after the time the extension of credit is established, no transaction fee will be charged or collected solely in connection with any debit or advance; and (c) the Lender or holder may not unilaterally amend the extension of credit.

**30. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[X] Condominium Rider        [ ] Planned Unit Development Rider

[ ] Other [Specify]

HECM First Deed Of Trust

ER 024 - 76 - 0751

**31. Nominee Capacity of MERS.** MERS serves as beneficiary of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Beneficiary herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Deed of Trust. Subject to the foregoing, all references herein to "Beneficiary" shall include Lender and its successors and assigns.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

1. Hof'd El-Amin

_____ (SEAL)
Wanda Carraway

6-20-11   **1OR**
Date

HBCM First Deed Of Trust

ER 024 - 76 - 0752

_____ [Space Below This Line For Acknowledgment] _____

State of TEXAS

County of Harris

This instrument was acknowledged before me this 20th June 2011 _____, by

Wanda Carraway .

_____
Notary Public

My Commission Expires: 7/23/2011 _____

T HAFID EL-AMIN
My Commission Expires
July 23, 2013

Page 12 of 13                    HECM First Deed Of Trust

## EXHIBIT A

Exhibit A to the Mortgage made on **June 20, 2011**, by **Wanda Carraway, a single woman** ("Borrower") to  **Urban Financial Group Inc.** ("Lender"). The Property is located in the county of **HARRIS**, state of **Texas**, described as follows:

### Description of Property

Legal description attached hereto as exhibit "A" and by this reference made a part hereof

ER 024 - 76 - 0754

## Condominium Rider
## (Home Equity Conversion Mortgage)

FHA Case #: ▮▮▮▮▮▮▮

THIS CONDOMINIUM RIDER is made on 6/20/2011 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Urban Financial Group Inc.** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2701 WESTHEIMER ROAD UNIT 9F, HOUSTON, Texas 77098**

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**The Regency House ("Condominium Project").**

If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

Wanda Carraway _____   6/20/2011
Wanda Carraway                                    Date

Page 1 of 1                                                          CondoRider

ER 024 - 76 - 0755

Legal description of land:

**Unit No. 9-F and the space encompassed by the boundaries thereof located in Building**

**A, together with an undivided 1.1330674% in and to the common elements of The**   D

**Regency House, a condominium project located in the City of Houston, Harris Conty,**

**Texas according to and as described by the Declaration of Condominium for The Regency House and exhibits recorded in Volume 107, Page 101 of the Condiminium**

**Records of Harris County, Texas.**

ER 024 - 76 - 0756

20110263473
# Pages 16
06/28/2011   11:40:47 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 72.00

**RECORDERS MEMORANDUM**
**This instrument was received and recorded electronically**
**and any blackouts, additions or changes were present**
**at the time the instrument was filed and recorded.**

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT C

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003. All rights reserved.

RP-2016-48336

ASSGN
A

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS;
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

## ASSIGNMENT OF DEED OF TRUST

Prepared by, Recording Requested By
and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928
Loan: ▓▓▓▓
Client ID: RMS/AOL

Min: 1007954-0005007734-5      MERS Phone: 1-888-679-6377

*FOR VALUE RECEIVED*, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** , whose address
is P.O. Box 2026, Flint, MI 48501-2026, **AS NOMINEE FOR URBAN FINANCIAL GROUP INC., ITS
SUCCESSORS AND ASSIGNS**, does hereby assign and transfer to **REVERSE MORTGAGE SOLUTIONS,
INC., ITS SUCCESSORS AND ASSIGNS,** forever and without recourse, whose address is 2727 Spring Creek
Drive, Spring, TX 77373, all its right, title and interest in and to a certain deed of trust from **WANDA
CARRAWAY, A SINGLE WOMAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR URBAN FINANCIAL GROUP INC., ITS SUCCESSORS AND ASSIGNS** for
**$352,500.00,**  dated 6/20/2011 of record on 6/28/2011 as Document 20110263473, in the **HARRIS** County Clerk's
Office, State of **TEXAS.**

2OR
1EE

Property Address: 2701 WESTHEIMER ROAD UNIT 9F, HOUSTON, TEXAS 77098

Executed this  1 - 21 - 2016 .

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR URBAN
FINANCIAL GROUP INC., ITS SUCCESSORS AND ASSIGNS**

By:     ROBBYE GAIL JOHNSON
Title:    ASSISTANT SECRETARY

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on *Jan. 28, 2016*  by ROBBYE GAIL JOHNSON the
ASSISTANT SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A DELAWARE
CORPORATION, AS  NOMINEE FOR URBAN FINANCIAL GROUP INC., ITS SUCCESSORS AND
ASSIGNS, on behalf of said corporation.

Notary Public in and for the State of Texas
Notary's Printed Name:  GENE PAUL DOUCET
My Commission Expires:  8/30/17

GENE PAUL DOUCET
Notary Public, State of Texas
My Commission Expires
August 20, 2017

Notary ID#12402487-6

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

RP-2016-48336

RP-2016-48336

\# Pages 2

02/04/2016 11:30 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees   $16.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT D

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

RP-2016-130366

03/30/2016   ER   $16.00

## ASSIGNMENT OF DEED OF TRUST

THE STATE OF TEXAS                    §
                                      §   KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS                      §

THAT REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS, ("Assignor"), for good and valuable consideration to Assignor in hand paid by FINANCE OF AMERICA REVERSE LLC, f/k/a URBAN FINANCIAL OF AMERICA, LLC formerly known as URBAN FINANCIAL GROUP, INC ("Assignee"), the receipt of which is hereby acknowledged and confessed, has SOLD, ASSIGNED, TRANSFERRED and CONVEYED, and by these presents does SELL, ASSIGN, TRANSFER and CONVEY unto Assignee that certain Fixed Rate Home Equity Conversion Deed of Trust executed by WANDA CARRAWAY, A SINGLE WOMAN, dated June 20, 2011 and recorded in the office of the County Clerk under Document No. 20110263473, of the Official Public Records of Real Property of HARRIS County, Texas, encumbering the real property described as follows:

UNIT NO. 9-F AND THE SPACE EMCOMPASSED BY THE BOUNDARIES THEREOF LOCATED IN BUILING A, TOGETHER WITH AN UNDIVIDED 1.1330674% IN AND TO THE COMMON ELEMENTS OF THE REGENCY HOUSE, A CONDOMINIUM PROJECT LOCATED IN THE CITY OF HOUSTON, HARRIS, CONTY, TEXAS ACCORDING TO AND AS DESCRIBED BY THE DECLARATION OF CONDOMINIUM FOR THE REGENCY HOUSE AND EXHIBITS RECORDED IN VOLUME 107, PAGE 101 OF THE CONDOMINIUM RECORDS OF HARRIS COUNTY, TEXAS ("Property")

Street Address: 2701 Westheimer Road Unit 9F, Houston, TX 77098

TO HAVE AND TO HOLD unto said Assignee, its successors and assigns, forever.

Executed the 21st day of March 2016.

REVERSE MORTGAGE SOLUTIONS, INC.

By: **Sandy Alexander**
Its: **Assistant Vice President**

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, on this 21st day of March, 2016 personally appeared **Sandy Alexander**, **Assistant Vice President** Reverse Mortgage Solutions, Inc., on behalf of said entity, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that the same was the act of said entity and that he/she executed the same as the act of such entity for the purposes and consideration therein expressed.

NOTARY PUBLIC STATE OF TEXAS
MY COMMISSION EXPIRES: 8-16-16

MELISSA AñN ROCHA
Notary Public, State of Texas
Comm. Expires 08-16-2016
Notary ID 129090525

**MERS Address** ("Assignor")
P.O. Box 2026
Flint, MI 48501-2026

Address of Assignee
c/o Reverse Mortgage Solutions, Inc.
14405 Walters Road, Suite 200
Houston, TX 77014

AFTER RECORDING RETURN TO:
Janice Vessella 2016-011552
Hughes, Watters & Askanase, L.L.P.
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002

2016-011552mjs.r1                    AOM

RP-2016-130366

\# Pages 2

03/30/2016 01:10 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees   $16.00

RP-2016-130366

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT E



14405 Walters Rd., Suite 200
Houston, TX 77014

May 23, 2018

Wanda Carraway
2701 WESTHEIMER ROAD UNIT 9F
HOUSTON, TX 77098


## HOME EQUITY CONVERSION MORTGAGE DUE AND PAYABLE NOTICE

RE:  Loan Number:        ███████

      Loan SKEY:

      Property Address:    2701 WESTHEIMER ROAD
                         UNIT 9F
                         HOUSTON, TX 77098

      Servicer:            RMS, Inc.

      Owner of Loan:       Finance of America Reverse LLC

**This communication is from a debt collector.  It is an attempt to collect a debt and any information obtained will be used for that purpose.  HOWEVER, IF YOU ARE IN BANKRUPTCY OR OBTAINED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED AS AN ATTEMPT TO COLLECT OR RECOVER A DEBT FROM YOU PERSONALLY.  THE SERVICER IS COMPLYING WITH STATUTORY/LEGAL NOTICE REQUIREMENTS TO ENFORCE THE LIEN AGAINST THE PROPERTY.**

Dear Wanda Carraway:

This letter concerns the above-referenced reverse mortgage loan which is secured by the property identified above.  RMS, Inc. services your loan for the owner of the loan.

In accordance with the terms of your loan, including the mortgage or deed of trust securing the amount owed ("security instrument"), you are hereby notified that your loan is in default and has been declared due and payable.  The terms of your loan require that you pay certain property charge expenses including items such as taxes and insurance.  The taxes have/has not been paid on the property.  Amounts have been advanced on your behalf to cover these expenses.  Your failure to fulfill your agreement is an event of default that has caused the loan to be declared due and payable.


**PLEASE REVIEW THIS LETTER AND THE ENCLOSED INFORMATION CAREFULLY IF YOU WISH TO AVOID FORECLOSURE OF THE PROPERTY.**

Default Demand Tax and Insurance, 06/09/2015

**LOAN IS DUE AND PAYABLE:**   At this time, the fully accelerated loan balance is $253,711.92. Please note that this amount is subject to change.  Because additional interest, mortgage insurance, servicing fees and other charges may accrue under the terms of the loan, the balance of the loan will continue to grow. Additionally, please take notice that in pursuing foreclosure, we are entitled to add expenses related to the foreclosure to the balance including, but not limited to, reasonable and customary attorney's fees and expenses pursuant to the loan documents and as permitted by law.  **For a payoff, please contact us at (877) 774-1419**

**RIGHT TO REINSTATE and OPTIONS TO SATISFY THE LOAN:**  Within thirty (30) days from the date of this notice, you can reinstate your reverse mortgage loan by paying an amount sufficient to correct the default which resulted in your loan coming due and payable.  This means you must pay the amount owing related to the servicer's payment of the property charge expenses referenced above.  As of this date, that amount is $3,623.65.  We encourage you to please contact us immediately at the below toll free number to ensure you know the correct amount prior to sending us certified funds.  Certified funds should be sent to RMS, Inc., 14405 Walters Rd., Suite 200, Houston, TX 77014. Please DO NOT SEND CASH.

You can also satisfy the loan and avoid foreclosure of the property by doing one of the following:
      (1)  Pay the loan balance in full; or
      (2)  Sell the property to a third-party and apply the net sale proceeds to the loan.  The sale can be for the lesser of (i) the outstanding loan balance or (ii) an amount that is at least 95% of the current appraised value of the property; or
      (3)  Provide us with a deed in lieu of foreclosure conveying good and marketable title.

These options must all be done in accordance with United States Department of Housing and Urban Development ("HUD") guidelines.  **The options are explained in more detail in the enclosed Home Equity Conversion Mortgage ("HECM") Information Sheet.**  HUD guidelines require that we obtain a full appraisal of the property by a HUD approved appraiser.  As such, you may be contacted by an appraiser used by our appraisal vendor in the coming weeks to attempt to schedule an appointment to visit the property.

**CREDITOR'S RIGHTS:**  **If the loan is not satisfied pursuant to one of the options set forth above under Options to Satisfy the Loan within thirty (30) days from the date of this notice, we will begin the process of foreclosure of the property.**  Importantly, once foreclosure proceedings are initiated, you may still be entitled to reinstate the loan, pay off the loan or pursue a foreclosure prevention alternative.  We urge you to review your security instrument and contact us concerning your options even after foreclosure has been commenced.

**FORECLOSURE PREVENTION OPTIONS AND EXTENSIONS OF TIME:**  This is a federally insured home equity conversion mortgage (also referred to as a "HECM") sponsored by the Federal Housing Administration ("FHA").  Traditional loan modification options that are used for traditional mortgages are not available for reverse mortgages.  However, HUD permits borrowers (and the estate/heirs of deceased borrowers) to exercise certain options.  Those options are listed above under Options to Satisfy the Loan and are discussed in more detail on the enclosed sheet entitled HECM Information Sheet.

We recognize that you may need more time to satisfy the loan if you choose one of these options.  We might be able to obtain an initial extension of time from HUD prior to referring the loan to foreclosure.  However, it is imperative you understand **your time is not unlimited.**  To determine whether you qualify for this initial extension, we must know your intention with respect to the property.  Accordingly, please contact us at our toll free number below to inform us of your intention and please also **fill out and return** the enclosed Important Notice within thirty (30) days from the date of this letter identifying what your intention is with respect to the property.

You also may still be able to enter into a plan for repayment of taxes, insurance and/or other property charges to reinstate your mortgage.  Please contact us immediately to discuss your options.

**ADDITIONAL DOCUMENTS WE NEED:** Please see the HECM Information Sheet and contact us for additional information.  Depending on the option you choose, the documents we need from you may vary.

**NO PERSONAL LIABILITY:** This is a non-recourse reverse mortgage loan and you will not be personally liable for the amounts owed.  You will not be pursued for any deficiency after foreclosure or after a short sale done in accordance with HUD guidelines and regulations.

**OBLIGATIONS:**  Please note that because the reverse mortgage loan is due and payable, there will be no further advances made.  It is your responsibility to maintain the property and to pay all applicable property charges such as property taxes, homeowner's association dues, homeowner's insurance and/or flood insurance.

**ADDITIONAL ASSISTANCE:** Additional assistance may be available to you through HUD or HUD approved agencies. You can obtain a list of HUD approved counseling agencies in your area by contacting HUD as follows:

**HUD-Approved Housing Counseling**
**(800) 569-4287**
**451 7th Street S.W.**
**Washington, DC 20410**
**http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm**

**What you may request:**  You are entitled to a copy of the loan documents (such as the note, loan agreement, security instrument and assignment) and the loan history.

**Special Notice Regarding Servicemembers Civil Relief Act:**  If you are a service member or a dependent of a service member, you may be entitled to certain protections under the federal service members Civil Relief Act, 50 U.S.C. Appx. §§501 *et seq.*, regarding the service member's interest rate, the risk of foreclosure, and counseling for covered service members that is available from Military OneSource and the United States Armed Forces Legal Assistance or any other similar agency.  Military OneSource can be contacted at www.militaryonesource.com, (800) 342-9647.  Please notify us as soon as possible if you or others with an interest in the property are or have, in the past twelve (12) months, performed active duty military service so that we can take appropriate action.

Assert and Protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active military service to the sender of this notice immediately.

**CONTACT YOUR SERVICER:**  We want to assure you that we are available to help you through this process.  We will be attempting to contact you by telephone throughout this process to learn the current status of your efforts to satisfy or reinstate the loan.  Please feel free to contact your assigned representative with questions or concerns at our toll free number below during regular business hours 8 AM to 5 PM.

Sincerely,

Pablo Elizondo, Assigned Representative
RMS, Inc.
Phone: (866) 799-7724
Fax:    (866) 790-3451
Pablo.Elizondo@rmsnav.com

If you did not sign the note and are not an obligor on this account, this notice is for informational purposes only and is not an attempt to collect a debt.

The reverse mortgage that is the subject of this communication is a non-recourse loan.

**HOME EQUITY CONVERSION MORTGAGE ("HECM") INFORMATION SHEET**
**PLEASE READ THIS INFORMATION CAREFULLY TO LEARN ABOUT AVAILABLE**
**OPTIONS TO AVOID FORECLOSURE OF A DUE AND PAYABLE LOAN**

**Please be advised that this is a non-recourse reverse mortgage loan and you will not be personally liable for the amounts owed. You will not be pursued for any deficiency after foreclosure or after completion of an approved foreclosure prevention alternative. The options that MAY be available for a <u>due and payable</u> reverse mortgage loan are as follows:**

1. **<u>Payoff Loan.</u>** The reverse mortgage loan can be paid off by paying the full amount of the debt owed on the loan via wire transfer or certified funds (cashier's check or money order). Please do not send cash. A payoff statement may be obtained by faxing a request from the borrower or authorized person on the loan to the following: (866) 790-3451. You can call to discuss this option and receive further instructions.

2. **<u>95% Payoff Option Available for Legally Authorized Estate Representative/Heirs:</u>** This option is only available when the last borrower on the reverse mortgage loan is deceased. When a HECM loan becomes due and payable as a result of the borrower's death and the property is conveyed by will or operation of law to the borrower's estate or heirs (including a surviving spouse who is not obligated on the HECM note) that party (or parties if multiple heirs) may satisfy the HECM debt <u>by paying the lesser of</u> (1) the full amount of the debt owed on the loan or (2) 95% of the current appraised value of the property. We must be informed immediately of the authorized person's intent to pursue this option, and we must be provided all necessary documents. The servicer will order an appraisal of the property by a HUD approved appraiser to determine the current appraised value. It is important that we be provided the contact information (name and telephone number) of someone who will grant an appraiser access to the property so that the required interior appraisal can be conducted. Please note that if you are using a lender to finance the amounts necessary to pay off the loan, they may have additional requirements.

   **IMPORTANT:** Pursuant to HUD guidance, the 95% Payoff option is only available when there is a **post-death** conveyance. This means that if a person owned the property prior to the borrower's death (for instance, if their name was on the deed or title to the property prior to the time the borrower died), they likely will not qualify for this option. Accordingly, a title report must be ordered by the servicer to verify ownership interests in the property before a 95% Payoff can be finally approved and completed.

3. **<u>Third-Party Sale of the Property (Including Third-Party Short Sale):</u>** The reverse mortgage loan can be satisfied by selling the property to a third-party buyer and using the sale proceeds to pay off the loan. The <u>property can be sold for the lesser of</u> (1) the full amount of debt owed on the loan or (2) an amount that is at least 95% of the current appraised value of the property. The servicer will order an appraisal of the property by a HUD approved appraiser to determine the current appraised value. It is important that we be provided the contact information (name and telephone number) of someone who will grant an appraiser access to the property so that the required interior appraisal can be conducted. **We must be contacted immediately and informed of the intent to pursue this option because the time to sell the property is not unlimited.** Some extensions of time to complete the sale may be available but are subject to HUD approval and dependent on obtaining information from the seller on the progress. A short sale package will have to be completed and approved.

HECM Information Sheet, 04/30/2015

4.   **Enter into a Deed-in-Lieu of Foreclosure:**  We may be able to accept a deed in lieu of foreclosure, which avoids the foreclosure process by permitting the property to be deeded to the mortgagee. The process takes approximately 120 days to complete.  During this period, the borrower or their estate will be responsible for maintaining the property, paying property charges such as taxes and homeowner's association dues and continuing the hazard and/or flood insurance.  If interested in this option, you should (1) fill out and sign the Important Notice and check the box for deed in lieu of foreclosure or (2) prepare a written request to enter into a deed in lieu of foreclosure and return either the executed Important Notice or your written request to your servicer as follows (1) if by mail, send to 14405 Walters Rd., Suite 200, Houston, TX 77014  (a self-addressed envelope is enclosed herein for your convenience) or (2) if by fax, then fax to (866) 790-3451.  Please note that to complete a deed in lieu transaction: (1) all parties with an interest in the property may need to execute the deed in lieu or other documents, (2) good marketable title must be conveyed and (3) the property must be vacant and cleared of all personal items, trash and debris. Making the request does not guaranty the completion of a deed-in-lieu.  It will be necessary to execute additional documentation.

5.   **Non-Borrowing Spouse:**  If there is a surviving spouse who was not a borrower on the reverse mortgage note, please contact us to discuss whether there may be any other options available.

6.   **Cure the Default that Caused the Loan to Become Due and Payable:**  If the loan has become due and payable for reasons other than death (such as failure to pay property taxes or insurance or failure to occupy the property as a primary residence), then you may be able to cure the default by taking actions to correct the default that resulted in the loan becoming due and payable.  Please call immediately to discuss your options.

7.   **Walk Away:**  There is always the option of walking away and permitting the lender to foreclose.  This is a non-recourse reverse mortgage loan and the borrower, the borrower's estate and borrower's heirs will not be pursued for a deficiency judgment after a foreclosure.  Please note that HUD and the reverse mortgage loan servicers intend for foreclosure to be the last possible alternative.

8.   **Appraisal Vendors:** HUD requires that an appraisal of the property be performed by a HUD approved appraiser.  You may be contacted by an appraiser used by our appraisal vendor in the coming weeks to attempt to schedule an appointment to visit the property.

9.   **Deceased Borrower:**  If the borrower is deceased and you are responding as a legal representative of the estate or on behalf of the legal representative of the estate, please note that we will need the following:
   (1) Copy of death certificate;
   (2) Legal documentation that provides the identity and legal interest of the successor in interest to the property (e.g., probated will, letter of testamentary, letter or order from the probate court or other legal documentation naming an executor/executrix, administrator or personal representative);
   (3) No Probate Required: if the estate does not require probate, provide a court order or an affidavit of heirship which provides the identity and legal interest of the successor in interest to the property (note that, if the laws in your state provide for a different form to accomplish this objective, we will accept such form);
   (4) If someone other than the appointed representative will be discussing the loan, please also provide written authorization from any executor/executrix, administrator or personal representative authorizing the release of information on the loan to that person.

**10. <u>Additional Required Information:</u>**  We will need the following:

    (1)  Fill out and return the enclosed form called "Important Notice" and inform us of the intentions with respect to the property;

    (2)  Contact information (name and telephone number) of someone who can grant access to the property so that the required appraisal can be conducted;

    (3)  If the borrower or legally authorized person is planning on paying off the loan, provide proof of funds or a copy of the loan approval letter from the lender;

    (4)  If the borrower or legally authorized person is selling the property, a copy of the listing agreement;

    (5)  If the borrower or legally authorized person is listing the property without a realtor, provide proof of the attempts to sell the property (an example would be the listing of the property on the Multiple Listing Service or MLS);

    (6)  When an offer is accepted, a copy of the sales contact should be provided.

**You can contact the Single Point of Contact (SPOC) assigned to this loan by calling (866) 799-7724.**

**The reverse mortgage that is the subject of this communication is a non-recourse loan.**

**This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.  HOWEVER, IF YOU ARE IN BANKRUPTCY OR OBTAINED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS INTENDED SOLELY FOR INFORMATIONAL PURPOSES.**



**RMS**
*Reverse Mortgage Solutions, Inc.*
FUNDING YOUR FUTURE

14405 Walters Rd., Suite 200
Houston, TX 77014

# IMPORTANT NOTICE

RE:   Loan Number:        XXXXX3594

Loan SKEY:          ▉▉▉▉

Property Address:   2701 WESTHEIMER ROAD UNIT 9F

HOUSTON, TX 77098

We want to ensure that we properly identify your intentions concerning the property identified above so that we may potentially provide you with the maximum amount of time that may be allowed before we commence foreclosure.  Therefore, we are requesting that you complete this entire form, and fax it to RMS, Inc. at (866) 790-3451 or mail it to 14405 Walters Rd., Suite 200, Houston, TX 77014. A self-addressed envelope is enclosed herein for your convenience.

| | **Description of Intentions**<br>**(please select all that apply)** |
|---|---|
| ☐ | **Payoff Option.**  I intend on paying off the loan with cash or funds obtained from financing. |
| ☐ | **95% Payoff Option.** I intend on exercising the 95% Payoff option (ONLY applicable to the borrower's estate or heirs AFTER the last borrower's death).<br>☐ Intend to pay with cash ☐ Intend to obtain financing |
| ☐ | **Third-Party Sale or Third-Party Short Sale.**  I intend to list, or have listed, the property for sale in order to pay off the loan with the sale proceeds. |
| ☐ | **Deed in Lieu Foreclosure Option**. I intend on requesting a deed in lieu of foreclosure.  I would like to begin the process of entering into a deed in lieu. |
| ☐ | **Walk Away.** I intend to walk away and take no action on the property. |
| ☐ | **Other** (including curing the default that caused the loan to become due and payable).  Please explain in writing below or attach an explanation. |

  

**By signing below you are not agreeing or obligating yourself to take or not take the actions indicated above.**

_____

**Print and Sign Name:** Borrower, Heir or Estate Representative (print and sign)                    Date

_____

**Phone Number and email address**

_____

**Mailing Address:** (if other than property address)


_____

**Print and Sign Name:** Borrower, Heir or Estate Representative (print and sign)                    Date

_____

**Phone Number and email address**

_____

**Mailing Address:** (if other than property address)


**\*\*IF THERE IS NO LIVING BORROWER AND YOU ARE COMPLETING THIS FORM AS THE DECEASED BORROWER'S ESTATE REPRESENTATIVE OR SURVIVING HEIR  ASSERTING A SUCCESSOR INTEREST TO THE PROPERTY, PLEASE COMPLETE, SIGN AND RETURN THE ADDITIONAL ENCLOSED QUESTIONNAIRE.**





## QUESTIONNAIRE CONCERNING SUCCESSOR IN INTEREST TO PROPERTY

*Please note that we will require sufficient information establishing the legal estate representative or legal heirs to the property in order to provide all information on the account.*

*If you are unsure of what the probate requirements are in the state where the deceased borrower lived, please contact someone familiar with the procedures in that state.*

1. What is your relationship to the deceased borrower (e.g. spouse, son, daughter, etc.)? (Please Print)_____

2. Are you the surviving spouse (Were you married to the deceased borrower at the time of his/her death)? ☐ Yes  ☐ No  If yes, my date of birth is:_____

   a. If you are not the surviving spouse, was the borrower married at the time of his/her death?
      ☐ No
      ☐ Yes.  Spouse Name and Phone No: _____

3. Is the property currently vacant?     ☐ Yes  ☐No
   **If not vacant, please provide name and phone number of person(s) living in property:**

   _____          _____
   Name                                                                    Phone Number

   _____          _____
   Name                                                                    Phone Number

4. Please provide the information regarding the individual that will provide access inside the home for the interior appraisal:

   Name (first and last): _____

   Phone Number (area code included)_____

5. Have you obtained a copy of the death certificate?     ☐ Yes  ☐ No
   **\*\* Please provide a copy of the death certificate.**

6. Did the borrower have a will at the time of his/her death?     ☐ Yes  ☐ No
   a. Has the will been filed with any court?     ☐ Yes  ☐ No
      **\*\*Please send a copy of the filed/probated will.**

7. **\*\* If probate has been opened, please send a copy of the filed/probated will and any filed probate application  identifying the court   and case/cause number.**






8. Has an Executor/Administrator/"Personal Representative" been appointed?    ☐ Yes ☐ No

Name (first and last): _____

Phone Number (area code included)_____

**\*\*Please provide copies of the letter/order of appointment**

9. **\*\*Please provide written authorization for release of information on the loan to you if there is an appointed representative for the estate other than you.**

10. **\*\*Please provide a copy of any letters of testamentary or letters of administration.**

11. If probate has not been opened, what date do you anticipate it being opened? _____
    (If probate not required, see next question)                          (mm/dd/yyyy)

12. **If probate is not required by state law**, do you have a court order or an Affidavit of Heirship or a Beneficiary Deed which provides the identity and legal interest of the borrower's successor in interest?
    ☐ Yes ☐ No
    **\*\*Please provide a copy** (Note, if the law in your state provides for a different form to accomplish this objective, we will accept such form.)

13. Please list all the people that have an interest in the property through inheritance or otherwise (first and last name, phone number:

Name:_____ Phone:_____ Relationship:_____

Name:_____ Phone:_____ Relationship:_____

Name:_____ Phone:_____ Relationship:_____

**Please return all documentation to :  RMS, Inc. by fax to (866) 790-3451
or by mail to 14405 Walters Rd., Suite 200, Houston, TX 77014.**





# EXHIBIT  F

Mackie Wolf Zientz & Mann, P.C .
PO Box 9077
Temecula, CA 92589-9077



9307 1100 1170 0974 8156 42

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

20181011-89

WANDA CARRAWAY
2701 WESTHEIMER RD UNIT 9F
HOUSTON, TX 77098-1237

Send Correspondence to:
Mackie Wolf Zientz & Mann, P.C .
14160 North Dallas Parkway
Suite 900
Dallas, TX 75254



ACC4

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650  FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

18-000230-126
October 10, 2018
CERT MAIL
WANDA CARRAWAY
2701 WESTHEIMER ROAD UNIT 9F
HOUSTON, TX 77098

RE:   LOAN NO. XXXXXX3160
MWZM No. 18-000230-126

## NOTICE OF ACCELERATION OF LOAN MATURITY

Dear WANDA CARRAWAY,

We have been retained by Reverse Mortgage Solutions, Inc., Mortgage Servicer for Finance of America Structured Securities Acquisition Trust 2017-HB1, Wilmington Savings Fund Society, FSB, not individually, but solely as trustee, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan.  A servicing agreement between the Mortgagee, whose address is:

Finance of America Structured Securities Acquisition Trust 2017-HB1, Wilmington Savings Fund Society, FSB, not individually, but solely as trustee
C/O Reverse Mortgage Solutions, Inc.
14405 WALTERS ROAD, SUITE 200
HOUSTON, TX 77014

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt.  We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note.  Notification was sent that default had occurred in the payment of the Note and that REVERSE MORTGAGE SOLUTIONS, INC. would accelerate the maturity of the Note if you did not cure the default.  Because of your failure to cure the default, the maturity date of the Note was accelerated effective 10/10/2018.

All unpaid principal and accrued interest on the Note are due and payable at this time.   According to the Mortgage Servicer's records, the total balance due as of the date of this notice is $259,018.13.  As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully pay off the loan.  You may obtain the precise amount due by contacting this firm at **(214) 635-2650**.  Payment must be made by cashier's check, certified check or money orders.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice.  If you do not, the debt will be assumed valid by the firm.  If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor. Additionally, all obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,



Mackie Wolf Zientz & Mann, P.C.

